**Steven Lee SHELDON, et al., Plaintiffs–Respondents,**

v.

**BOARD OF TRUSTEES OF the POLICE RETIREMENT SYSTEM, Defendant–Appellant.**

**No. 71717.**

Supreme Court of Missouri, En Banc.

Nov. 14, 1989.

David R. Bohm, Asst. City Counselor, James J. Wilson, City Counselor, St. Louis, Mo., for defendant-appellant.

Donald L. Schlapprizzi, Gary A. Growe, St. Louis, Mo., for plaintiffs-respondents.

BILLINGS, Judge.

Suit for declaratory judgment brought by Steven Lee and Lisa Sheldon to determine whether or not the Board of Trustees of the Police Retirement System had a right to setoff pension payments made by them to Steven Sheldon with workers' compensation payments for nursing care, paid by the Board of Police Commissioners pursuant to a negotiated settlement agreement. The trial court determined there was no right to a setoff for the pension payments. The court of appeals reversed. This Court granted transfer of the case and affirms the trial court's judgment.

Documentary evidence and facts stipulated by both parties were presented to the trial court for adjudication. The facts as stipulated show Steven Sheldon was a police officer for the St. Louis Metropolitan Police Department. On February 7, 1985,

he was shot in the performance of his duties and was permanently paralyzed from the chest down.

The Board of Trustees of the Police Retirement System (hereinafter the "Pension System") determined that Steven was totally disabled. On August 17, 1985, he was retired pursuant to § 86.263, RSMo 1986, and began receiving $2,204.17 in monthly pension payments. He will require extensive medical and nursing care for the rest of his life. The cost of those expenses will greatly exceed the amount of his pension payments.

On April 29, 1985, Steven filed a claim against the St. Louis Metropolitan Police Department (hereinafter the "Police Department") under Missouri's Workers' Compensation Law, § 287.140, RSMo 1986, solely for payment of his medical and nursing care, past and future. The Pension System disputed the fact that the claim was solely for payment of medical and nursing care. After protracted negotiations, the Sheldons and the Board of Police Commissioners for the St. Louis Police Department entered into a settlement agreement. The agreement provided for a lump sum payment of $125,000.00 as compensation for past nursing care. In addition, monthly annuity payments of $2,154.00 would be made jointly to the Sheldons and continue throughout the life of the survivor. The trial court determined that the annuity payment is solely to cover the cost of his future nursing care. The lump sum payment and the annuity were given in consideration of Steven Sheldon's release of any further claim for medical and nursing benefits and his wife's claim of any survivor death benefits.

The Police Department was Steven's employer and liable for his workers' compensation claims. See § 287.140, RSMo 1988. The Pension System is a separate legal entity liable to the Sheldons for retirement or pension payments. During settlement negotiations between the Sheldons and the Police Department, the question arose as to whether or not payments made by the Pension System would be required to be offset by any payments made by the Police Department because of § 86.297, RSMo 1986. The pertinent portion of that statute reads:

Any amounts which may be paid or payable by the said cities under the provisions of any workers' compensation or similar law to a member or to the dependents of a member on account of any disability or death shall be offset against and payable in lieu of any benefits payable out of funds provided by the said cities under the provisions of 86.200 to 86.363 on account of the same disability or death.

The Sheldons would only consent to the settlement agreement if the pension Steven was currently receiving would not be offset by any payments made under the agreement. The trial court found § 86.297 inapplicable and no setoff was allowed. The court of appeals held to the contrary and reversed.

In court-tried cases the appellate court usually reviews the case to determine whether there is substantial evidence to support the trial court's finding; whether the finding was against the weight of the evidence; whether the law was declared erroneously or whether the law was erroneously applied. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). However, when the case is tried on a stipulation of facts not involving the resolution by the trial court of conflicting testimony, the only question before the Court is whether the trial court drew the proper legal conclusions from the facts stipulated. *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979); *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988). The Court finds all legal conclusions were properly drawn by the trial court.

The interpretation of § 86.297 is one of first impression, thus the Court must look to the well-established canons of statutory construction for guidance. The primary rule of statutory construction is to ascertain the intent of the General Assembly from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning. *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc

1988). The Court must also look to the object to be accomplished and the problems to be remedied by the statute. *State ex rel. Kemp v. Hodge*, 629 S.W.2d 353, 358 (Mo. banc 1982). The General Assembly is presumed to intend to enact a just law that serves the welfare of its constituents rather than an absurd law. *State ex rel. Lack v. Melton*, 692 S.W.2d 302, 304 (Mo. banc 1985). The Court favors construction that avoids unjust or unreasonable results. *Rothschild v. State Tax Com'n of Missouri*, 762 S.W.2d 35, 37 (Mo. banc 1988).

It is undisputed that for the remainder of his life, Steven Sheldon will require nursing care. The cost of this care was determined by the trial court to be in excess of two million dollars. The annuity agreement entered into between the Police Department and the Sheldons was to compensate for that expense only.

Steven Sheldon was awarded and received pension benefits of $2,204.17 per month in lieu of the salary he would have received had he not been injured. *Section 86.297, RSMo 1986*, requires that any payments made for death or disability under the workers' compensation statute be offset against and payable in lieu of any benefits payable out of funds paid through the police relief and pension system. The appeals court interpreted this language to require pension payments be offset by any payment made through workers' compensation, regardless of the reason for the workers' compensation payment. The court of appeals found that the plain and ordinary meaning of "any" meant all payments, regardless of the reason the payment is made.

The court of appeals also based its opinion on the fact that the General Assembly would have used more specific language had its intent been to exclude medical payments from the setoff. The court relied on *§ 287.140, RSMo 1986*, of the Workers' Compensation Law. That statute reads in part:

> In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury.

The appeals court reasoned the specific reference to medical benefits in this statute indicates the General Assembly would always use specific language whenever medical benefits were involved.

The interpretation set forth by the court of appeals leads to an unjust and harsh result. Following their interpretation, a policeman who retired after serving the requisite number of years would be put in a financially better position than one who retired because he was shot and paralyzed in the line of duty. This result would occur because although both would be receiving the same amount of funds, *albeit* from different sources, the injured policeman would have significantly more expenses than the uninjured one. Under the facts of this case, after nursing expenses were paid, the injured policeman would have $50.00 per month on which to live, while the uninjured one would have $2,204.17. The Court does not believe the General Assembly intended such a result.

Workers' Compensation is considered substitutional for common law tort remedies whose primary purpose is to mitigate losses sustained from accidental injuries received by working persons in the course of employment. *Bethel v. Sunlight Janitor Service*, 551 S.W.2d 616, 618 (Mo. banc 1977); *Page v. Green*, 686 S.W.2d 528, 530 (Mo.App.1985). The burden is placed on industry rather than the public. *Tibbs v. Rowe Furniture Corp.*, 691 S.W.2d 410, 412 (Mo.App.1985). It is intended to enable an injured employee to recover compensation and to do away with common law defenses and disabilities. *Bethel v. Sunlight Janitor Service*, 551 S.W.2d at 618.

■ Under Missouri's common law tort doctrine, damages can be recovered for both lost wages and medical expenses without one offsetting the other. *Petre v. United States*, 531 F.Supp. 931, 934–35 (E.D.Mo.1981); *See also: Sampson v. Missouri Pacific Railroad*, 560 S.W.2d 573, 588–89 (Mo. banc 1978); *Swinger v. Bell*,

373 S.W.2d 30, 36 (Mo.1963); *Wilcox v. Swenson,* 324 S.W.2d 664, 672–73 (Mo. 1959).

Workers' compensation benefits fall into two types: payments for death and payment for disability or physical injury. Payments made for physical injury are divided into two categories: wage-loss payments based on the concept of disability; and payment of hospital and medical expenses occasioned by any work-connected injury, regardless of wage loss or disability. *A. Larson, The Law of Workmen's Compensation, Vol. 2, § 57.10 (1989).*

The Workers' Compensation Act is to be broadly and liberally interpreted to favor the employee and the public interest. *Wolfgeher v. Wagner Cartage Service, Inc.,* 646 S.W.2d 781, 783 (Mo. banc 1983). The reference in the workers' compensation statute to medical and nursing benefits, in addition to other compensation, is not dispositive of the General Assembly's intent to allow a setoff for pension payments with all payments made under workers' compensation. Nowhere in *§ 287.140* is there any mention of a setoff. Rather, the language quoted simply defines the types of benefits payable under the workers' compensation statute.

The Pension System also argues *§ 86.-460, RSMo 1986,* is dispositive. That statute deals with the same subject matter as *§ 86.297* but applies to cities of a different size. *Section 86.460* was amended in 1985 to specifically exclude medical benefits paid under workers' compensation from offsetting the pension payments. Prior to that amendment, the police relief and pension systems statute for cities with a population of 500,000 or more, and alternate retirement system statutes for cities of 700,000 or more, and cities with a population of 300,000 to 700,000 were identical for pension payment setoff. *See §§ 86.103, 86.297* and *86.460, RSMo 1978.* The Pension System argues that by amending *§ 86.460* in 1985 to specifically exclude medical payments from the setoff, the General Assembly must have meant not to exclude medical benefits in the prior statutes.

This argument also leads to an illogical conclusion: that the General Assembly intended for injured policemen in cities the size of Kansas City *not* to have pension payments offset by any medical payments received; yet intended pension setoffs for injured policemen in cities the size of St. Louis.

The Court recognizes the rule of statutory construction that words should be given their plain and ordinary meaning whenever possible. *Rothschild v. State Tax Com'n of Missouri,* 762 S.W.2d 35, 37 (Mo. banc 1988). Courts should look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical result defeating the purpose of the General Assembly. *State ex rel. Md. Heights, etc. v. Campbell,* 736 S.W.2d 383, 387 (Mo. banc 1987). The Court is also obliged to reconcile and harmonize statutes dealing with the same subject if it is reasonably possible. *Goldberg v. Administrative Hearing Commission,* 609 S.W.2d 140, 144 (Mo. banc 1980).

The Pension System's argument ignores the complete changes made in *§ 86.460.* When the General Assembly made the changes in *§ 86.460,* it specifically excluded medical benefits from the pension setoff. At the same time, it deleted the words "payable in lieu of" (any benefits) and "out of" (funds provided under . . .). It is a well established presumption that the General Assembly did not intend for any part of a statute to be without meaning or effect. It is not presumed to have intended a useless act. *Stiffelman v. Abrams,* 655 S.W.2d 522, 531 (Mo. banc 1983). The presumption is that it intended its act to have applicability and effect. *Willow Springs v. Missouri State Librarian,* 596 S.W.2d 441 (Mo.1980).

The deleted phrases were deleted because the statute no longer needed those clarifying phrases. The clarifying phrases were only necessary to designate the component of the workers' compensation payment which would be paid "in lieu of" pension payments, as found in *§ 86.297.* The use of these clarifying phrases indicates the General Assembly's awareness of the different types of workers' compensa-

tion payments. It also demonstrates their intent that only that portion of the workers' compensation payment that represents lost wages should be used to offset pension payments.

■ The purpose of the setoff provision is to prevent double compensation for one injury, thus giving the injured person a windfall. The Court cannot construe the compensation act in such a way that it would tend to defeat its purpose. *Brunner v. Patti*, 343 Mo. 274, 121 S.W.2d 153, 156 (1938). The Court's finding that *§ 86.-297* does not permit the Pension System to offset its payments with payments made under workers' compensation for nursing care is in accord with this purpose. The recipient is left in the same position as the person who draws a pension without an injury and nursing care expenses. This interpretation leads to a just and rational result that is consistent with the General Assembly's intent to provide for injured employees' medical care while not overcompensating for their injury. The Court finds that the Pension System has no right to offset its payments with funds received through workers' compensation solely for the payment of nursing care.

The judgment is affirmed.

BLACKMAR, C.J., ROBERTSON, RENDLEN, HIGGINS and COVINGTON, JJ., and CLARK, Special Judge, concur.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.